Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

STEPHEN BUSHANSKY,

Plaintiff,

v.

INSTRUCTURE, INC., JOSH COATES, DAN GOLDSMITH, STEVEN A. COLLINS, WILLIAM M. CONROY, ELLEN LEVY, KEVIN THOMPSON, and LLOYD G. WATERHOUSE,

Defendants.

Case No. '20CV0113 JAH AGS

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Instructure, Inc. ("Instructure" or the "Company") and the members of Instructure's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Instructure will be acquired by Thoma Bravo, LLC ("Thoma Bravo") through its affiliates PIV Purchaser, LLC ("Parent") and PIV Merger Sub, Inc., ("Merger Sub") (the "Proposed Transaction").

2. On December 4, 2019, Instructure issued a press release announcing that they had entered into an Agreement and Plan of Merger dated November 11, 2019 (the "Merger Agreement") to sell Instructure to Thoma Bravo for $47.60 in cash for each share of Instructure common stock. The Proposed Transaction values Instructure at an aggregate equity value of approximately $2.0 billion.

3. On January 2, 2020, Instructure filed a Schedule 14A Definitive Proxy Statement (as amended on January 7, 2020, the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Instructure stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Instructure management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); (iii) the background of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Instructure's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Instructure maintains one of its six U.S. offices in San Diego, California and therefore transacts business in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Instructure.

9. Defendant Instructure is a Delaware corporation, with its principal executive offices located at 6330 South 3000 East, Suite 700, Salt Lake City, Utah 84121. The Company helps

people grow from the first day of school to the last day of work. More than 30 million people use the Canvas Learning Management Platform ("Canvas") for schools and the Bridge Employee Development Platform ("Bridge") for businesses. Instructure's common stock trades on the New York Stock Exchange under the ticker symbol "INST."

10. Defendant Josh Coates ("Coates") has been Executive Chairman of the Board since January 2019. Prior to that, defendant Coates served as the Company's Chief Executive Officer ("CEO") beginning in October 2010 and as a director of the Company since January 2010.

11. Defendant Dan Goldsmith ("Goldsmith") has served as the Company's CEO since January 2019 and has been a director of the Company since October 2018.

12. Defendant Steven A. Collins ("Collins") has been a director of the Company since May 2014.

13. Defendant Kevin Thompson ("Thompson") has been a director of the Company since November 2016. Defendant Thompson is President and CEO of SolarWinds Inc., a company that was acquired by a private equity consortium led by Thoma Bravo and Silver Lake Group L.L.C.

14. Defendant Lloyd G. Waterhouse ("Waterhouse") has been a director of the Company since August 2015.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

16. Thoma Bravo is a leading private equity firm focused on the software and technology-enabled services sectors. With a series of funds representing more than $35 billion in capital commitments, Thoma Bravo partners with a company's management team to implement operating best practices, invest in growth initiatives and make accretive acquisitions intended to

accelerate revenue and earnings, with the goal of increasing the value of the business. The firm has offices in San Francisco and Chicago.

17. Parent is a Delaware limited liability company and an affiliate of Thoma Bravo.

18. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. With applications for learning, assessment and performance management, Instructure enables organizations worldwide to develop, deliver, manage and track engaging academic and employee development programs. Built on its innovative, cloud-based platform, its applications combine powerful, elegant and easy-to-use functionality with the reliability, security, scalability and support its customers require. They include: Canvas – a learning management platform for K–12 and higher education; and Bridge – an employee development and engagement platform.

20. Instructure launched its first offering, Canvas, in February 2011 and has experienced rapid customer adoption in the education market. To better meet the needs of the corporate market, Instructure leveraged a portion of the foundational code underlying Canvas to develop Bridge, which it launched in February 2015. Subsequent offerings include Canvas Interactive Video, which it launched in 2016, and Canvas Assessment, which it launched in 2017. As of December 31, 2018, Instructure had over 4,000 customers, representing colleges, universities, K–12 schools and companies in more than 70 countries.

21. For 2018, 2017 and 2016, Instructure's revenue was $209.5 million, $161.0 million and $112.6 million, respectively, representing year-over-year growth of 30% and 43%. Instructure has experienced net revenue retention rates of over 100% at each of December 31, 2018, 2017 and 2016.

22. On July 29, 2019, Instructure announced its financial results for the second quarter

ended June 30, 2019. Defendant Goldsmith commented on the quarter's strong financial results, stating:

> Q2 was another solid quarter for Instructure as we delivered $62.9 million in revenue. Our mission of helping people grow from the first day of school to the last day of work is resonating with our growing customer base of more than 30 million people.

23. On October 28, 2019, Instructure announced its financial results for the third quarter ended September 30, 2019. Defendant Goldsmith commented on the quarter's strong financial results, stating:

> Q3 was a solid quarter for Instructure as we grew revenue while improving the bottom line. We delivered $68.3 million in revenue, representing 24% year-over-year growth, had GAAP net loss of $20.9 million and exceeded our previously issued guidance for non-GAAP net income by $2.9 million.

**The Proposed Transaction**

24. On December 4, 2019, Instructure issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> Salt Lake City – Dec. 4, 2019 - Instructure (NYSE: INST) today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, LLC, a leading private equity investment firm, in an all-cash transaction that values Instructure at an aggregate equity value of approximately $2.0 billion. As part of the terms of the agreement, Instructure stockholders will receive $47.60 in cash per share. The price per share represents an 18% premium to the company's 3-month volume-weighted average price as of October 27, 2019, the day prior to the Company's third quarter earnings call at which it announced a strategic review for its Bridge business.
>
> "After a thorough review of strategic alternatives, the Instructure board of directors is pleased to reach this agreement," said Josh Coates, Executive Chairman of the Board at Instructure.
>
> The Instructure management team, led by CEO Dan Goldsmith, will continue to lead the company in their current roles. Thoma Bravo will support Instructure as it increases investment in education technology innovation and expands internationally.
>
> "Instructure believes the opportunity to become a private Company will provide additional flexibility and position us to invest more strategically to drive innovation for our customers," said Goldsmith. "We look forward to working closely with all

> parties to complete this transaction and enter into our next chapter of growth and industry leadership."
>
> "Instructure's Canvas product is the gold standard for learning management systems in the global education market," said Holden Spaht, a Managing Partner at Thoma Bravo. "We are excited to partner with Dan and the senior management team to support continued investment and innovation in the company's market leading products and world class customer support."
>
> Brian Jaffee, a Principal at Thoma Bravo added, "We've followed the impressive Instructure growth story for many years and believe Canvas is a highly unique vertical market SaaS leader with exciting scale and future growth potential. We look forward to building on the strong momentum in the business and accelerating growth and product investment both organically and through M&A."
>
> The members of Instructure's Board of Directors have unanimously approved the transaction and recommended that its stockholders approve the merger. A special meeting of Instructure's stockholders will be held as soon as practicable following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission ("SEC") and subsequent mailing to its stockholders. Instructure's headquarters will remain in Salt Lake City, Utah, with regional offices across the United States and abroad. Closing of the transaction is subject to approval by Instructure stockholders and certain regulatory and antitrust authorities and the satisfaction of customary closing conditions. The transaction is expected to close in the first quarter of 2020 and is not subject to a financing condition. Upon completion of the acquisition, Instructure will become wholly-owned by Thoma Bravo.
>
> The agreement includes a 35 day "go-shop" period expiring on January 8, 2020, which permits Instructure's board of directors and advisors to solicit alternative acquisition proposals from third parties. Instructure will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement, including the payment of a termination fee to Thoma Bravo. There can be no assurance that this 35 day "go-shop" will result in a superior proposal, and Instructure does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.
>
> J.P. Morgan Securities LLC is serving as the exclusive financial advisor to Instructure and Cooley LLP is serving as the legal advisor to Instructure. Kirkland & Ellis LLP is serving as legal advisor to Thoma Bravo.

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

25. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Instructure's stockholders. The Proxy Statement misrepresents or

omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

26. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Instructure management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, J.P. Morgan; (iii) the background of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Company's Financial Projections***

27. The Proxy Statement omits material information regarding Company management's financial projections.

28. For example, with respect to the Company's projections, the Proxy Statement fails to disclose the line items underlying adjusted EBITDA and unlevered free cash flow ("UFCF").

29. The omission of this information renders the statements in the "Management Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

30. The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Instructure's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

31. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items underlying UFCFs for each set of projections utilized by J.P. Morgan in the analysis; (ii) the UFCF of Instructure during the final year of the 14.25 year period or clarification that J.P. Morgan utilized calendar year 2033 UFCF; (iii) the range of terminal asset values of Instructure; (iv) quantification of the inputs and assumptions underlying the discount rates of 9.50% to 11.50%; and (v) the implied terminal multiples resulting from the analysis.

32. With respect to J.P. Morgan's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the price targets observed by J.P. Morgan and the sources thereof.

33. The omission of this information renders the statements in the "Opinion of J.P. Morgan Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

35. For example, the Proxy Statement sets forth that at a November 1, 2019 Board meeting, the Board discussed with Company management, "aspects of the long-term financial plan and projections prepared by Instructure management, including . . . Instructure's recent modifications of its stock-based compensation policies that would increase the proportion of base compensation that would be paid in the form of cash and reduce the dilutive effect of further stock grants. . . ." Proxy Statement at 34. Yet, the Proxy Statement fails to disclose the timing and nature of all communications regarding the modifications to the Company's stock-based compensation policies, as well as who participated in all such communications.

36. Additionally, the Proxy Statement sets forth that on December 2, 2019:

> The Board of Directors instructed Mr. Coates to be responsible for further communications with Sponsor C and Thoma Bravo with respect to their proposals,

> acknowledging that Mr. Coates was best positioned to coordinate such request for final bids for a variety of reasons, including his knowledge of the operations and business of Instructure, his service as a member of the Transaction Committee overseeing the sales process, the absence of any actual or perceived conflicts with either party, his experience in negotiations, and his status as the Executive Chairman of the Board of Directors.

*Id.* at 39. Then, "[l]ater that same day, at the direction of the Board of Directors, Mr. Coates and a representative of Sponsor C discussed the Sponsor C $47.00 Proposal and Sponsor C agreed to increase the Sponsor C $47.00 Proposal to $47.50 per share. . . ." *Id.* at 40. The Proxy Statement then states, "[l]ater that evening, at the direction of the Board of Directors, Mr. Coates *and Mr. Waterhouse* reached out to a representative of Thoma Bravo. Subsequent to this discussion, Thoma Bravo increased its proposal to acquire Instructure to $47.60 per share. . . ." *Id.* (emphasis added). The Proxy Statement fails, however, to disclose: (i) the Board's basis for allowing defendant Waterhouse to contact Thoma Bravo with defendant Coates when the Board had instructed defendant Coates to be responsible for communications earlier that day; and (ii) why defendant Waterhouse was not similarly authorized to contact Sponsor C.

37. Moreover, the Proxy Statement sets forth that:

> On January 29, 2019, Instructure and Sponsor A entered into a confidentiality agreement to enable further due diligence discussions with respect to Sponsor A's proposal. The confidentiality agreement contained standstill provisions, including a provision prohibiting Sponsor A from, publicly or privately, requesting a waiver of the standstill (however, the standstill provision still allowed Sponsor A to privately and confidentially approach Instructure senior management, the Board of Directors or J.P. Morgan at any time to make acquisition proposals). In addition, all of the other confidentiality agreements with potential transaction counterparties referred to in this section of the proxy statement contained standstill provisions with such terms.

*Id*. at 27-28. The Proxy Statement fails, however, to disclose the details of the standstill provisions, including the specific conduct by potential transaction counterparties that is governed by the standstill provisions.

38. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

39. The Proxy Statement omits material information regarding potential conflicts of interest of Company insiders.

40. For example, the December 4, 2019 press release announcing the Proposed Transaction states, "[t]he Instructure management team, led by CEO Dan Goldsmith, will continue to lead the company in their current roles." Yet, the Proxy Statement fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Thoma Bravo and Instructure executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Thoma Bravo's proposals mentioned the possibility of Board positions, management retention, or equity participation in the combined company.

41. Additionally, at the December 3, 2019 Board meeting, the Proxy Statement states that the Board discussed "the possibility of establishing a small bonus pool for the purpose of recognizing the efforts of certain employees of Instructure team with respect to the Merger. . . ." *Id.* at 42. The Proxy Statement fails to disclose: (i) the identities of the Instructure team for who the Board considered establishing a bonus pool; (ii) the proposed amount of the bonus pool; and (iii) whether the Board did in fact establish a bonus pool.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Instructure stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company management's financial projections, the data and inputs underlying the valuation analyses performed by the Company's

financial advisor, the background of the Proposed Transaction, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Instructure within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Instructure, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Instructure's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Instructure, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed

Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Instructure stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 16, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: ______________________
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*